**JUDICIAL WATCH, INC., Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Defendant.**

**No. CIV.A. 99–01038 (HHK).**

United States District Court, District of Columbia.

Oct. 2, 2000.

---

Larry Elliot Klayman, Klayman & Associates, PC, Washington, DC, for Plaintiff.

Benjamin P. Cooper, U.S. Dept. of Justice, Washington, DC, Anne L. Weismann,

U.S. Dept. of Justice, Civil Div., Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

KENNEDY, District Judge.

In this matter, plaintiff Judicial Watch, Inc., a nonprofit public-interest law firm, seeks judicial review of the decisions by defendant, the Department of Justice (DOJ), not to turn over requested documents under the Freedom of Information Act (FOIA),[1] not to grant Judicial Watch a fee waiver, and not to classify Judicial Watch as a representative of the news media.

Before the court is DOJ's motion for summary judgment regarding fee issues relative to Judicial Watch's FOIA request including the fee-waiver and fee-categorization determinations. Upon consideration of DOJ's motion, the opposition thereto, and the case record, the court grants the motion.

## I. FACTUAL BACKGROUND

Judicial Watch is a nonprofit, public-interest organization that studies, investigates, and exposes government corruption via FOIA requests and other legal remedies. On October 19, 1998, Judicial Watch submitted to DOJ a FOIA request seeking:

> *all correspondence, memoranda, documents, records, lists of names, applications, diskettes, letters, expense logs, and receipts, calendar or diary logs, facsimile logs, telephone records, tape recordings, notes, electronic mail, and other documents and things, that refer or relate to the following in any way: ... Senator Orrin Hatch and the Bank of Credit and Commerce International (BCCI).[2]*

---

1. 5 U.S.C. § 552 *et seq.*

2. Letter of 10/19/1998 ("Pl.'s Req.") at 1, Ex. 1 to Def.'s Mot. for Summ. J. ("Def.'s Mot."). For purposes of evaluating defendant's motion, the parties' respective statements of material facts are supplemented, where necessary, by information from correspondence between the parties, as submitted to the court.

In its request, Judicial Watch also requested a fee waiver or, alternatively, argued for reduced fees as a "representative of the news media."

Three components of DOJ responded to plaintiff's FOIA request: the Office of Information and Privacy (OIP), the Civil Division, and the Criminal Division. OIP is the DOJ component responsible for reviewing records within the Offices of Attorney General and Legislative Affairs pursuant to FOIA requests. OIP notified plaintiff that it did not locate any responsive documents, that it had exhausted the requisite two hours of search time,[3] and that it could process plaintiff's FOIA request further once plaintiff agreed to pay the fees required by FOIA. Additionally, OIP denied plaintiff's fee-waiver request and plaintiff's request for "representative of the news media" status. In response to plaintiff's appeal, OIP affirmed that no responsive documents were located, that plaintiff would not be granted "representative of the news media" status, and that a fee waiver was not appropriate.

The Criminal Division, another DOJ component, also responded to plaintiff's FOIA request. The Criminal Division notified plaintiff that it had located many potentially responsive documents, but as it had exceeded the initial two hours of search time to which plaintiff was entitled, the search could only continue once plaintiff paid the required fees. Additionally, the Criminal Division denied plaintiff's fee-waiver request.

3. DOJ regulations provide that "except for requesters seeking records for a commercial use, components will provide without charge: (i)[t]he first 100 pages of duplication (or the cost equivalent); and (ii)[t]he first two hours of search (or the cost equivalent)." 28 C.F.R. § 16.11(d)(3) (1999).

4. Fed.R.Civ.P. 56(c).

5. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotation marks omitted).

The Civil Division, the third DOJ component responding to plaintiff's FOIA request, informed plaintiff that it found no responsive documents during the initial two-hour search, and that the search could proceed once plaintiff agreed to pay the required fees. The Civil Division also denied plaintiff's fee-waiver request.

## II. LEGAL STANDARD

A motion for summary judgment should be granted only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[4] The moving party's "initial responsibility" consists of "informing the [trial] court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[5]

If the moving party makes this showing, the burden then shifts to the non-moving party to establish that a genuine issue as to any material fact actually exists.[6] To meet its burden, the non-moving party must show that " 'the evidence is such that a reasonable jury could return a verdict' " in its favor.[7] Such evidence must consist of more than mere unsupported allegations or denials and must set forth specific facts showing that there is a genuine issue for trial.[8] If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.[9]

6. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

7. *Laningham v. United States Navy*, 813 F.2d 1236, 1241 (D.C.Cir.1987) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

8. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 322 n. 3, 106 S.Ct. 2548.

9. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.

## III. ANALYSIS

Under FOIA, agencies must charge a reasonable fee for searching, duplicating, and reviewing files.[10] However, FOIA provides for exceptions which reduce fees for several categories of requesters.[11] Additionally, FOIA requires agencies to waive the fee if disclosure of the requested information will be in the public interest.[12] At issue in this summary-judgment motion is: 1) whether the DOJ components properly denied plaintiff's request for a fee waiver, and 2) whether plaintiff qualifies for a fee reduction under the "representative of the news media" fee category. From its review of the papers, the court concludes there are no genuine issues of material fact, and proceeds to analyze each issue. As a decision in Judicial Watch's favor on the fee-waiver decision would obviate the need to review the fee-category decision, the court first evaluates the former.

### A. FEE WAIVER

#### 1. Standard and Scope of Review

The court reviews fee-waiver decisions *de novo*.[13] The court must limit its review to the administrative record established before the agency.[14] Court interpretations of what constitutes the administrative record differ. Because Judicial Watch provided information relevant to the fee-waiver analysis for this first time in its appeal letters from the initial fee-waiver denials by the DOJ components, the court will first determine specifically whether such letters are included in the administrative record.

In *Pederson v. Resolution Trust Corp.*, the District Court for the District of Colorado determined that information included in the requester's appeal letter is part of the administrative record.[15] However, in *National Treasury Employees Union v. Griffin*, the Court of Appeals for this circuit stated without discussion that "[t]he reasonableness of the agency's refusal depends on information before it *at the time of its decision*."[16] The *Griffin* court did not specify whether the relevant "decision" was the initial agency decision to deny a fee-waiver or the agency decision to deny an appeal, even though both appeal and denial letters were before the court. In *Landmark v. I.R.S.*, this court held that the administrative record ended with the agency's initial fee-waiver denial.[17] However, *Landmark* is factually distinct and carries less significance relative to the present case because no appeal of the fee-waiver denial appeared in the administrative record. In the interests of clarity and fairness, the court shall construe the appeal letters submitted by Judicial Watch to DOJ as part of the administrative record for purposes of fee-waiver review.

#### 2. Fee Waiver Requirements

■ The agency must waive fees if disclosure of the requested information is 1) "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of

---

10. *See* 5 U.S.C.A. § 552(a)(4)(A)(ii) (West 1996) (giving agencies authority to promulgate regulations regarding search, duplication, and review fees); *see also* 28 C.F.R. 16.11(c) (1999) (specifying that DOJ components *shall* charge search, duplication and review fees unless other portions of the regulations permit a waiver or reduction) (emphasis added).

11. *See* 5 U.S.C.A. § 552(a)(4)(A)(ii) (West 1996).

12. *See id.* § 552(a)(4)(A)(iii) (West 1996).

13. *See* 5 U.S.C.A. § 552(a)(4)(A)(vii) (West 1996); *Campbell v. U.S. Dept. of Justice*, 164 F.3d 20, 35 (D.C.Cir.1998); *Larson v. C.I.A.*, 843 F.2d 1481, 1483 (D.C.Cir.1988).

14. *See Larson*, 843 F.2d at 1483; *Campbell*, 164 F.3d at 35.

15. 847 F.Supp. 851, 854 (D.Col.1994).

16. 811 F.2d 644, 648 (D.C.Cir.1987) (emphasis added).

17. Civ. No. 97–1474, slip op. at 4 (D.D.C. 1997).

the government" and 2) "not primarily in the commercial interest of the requester." [18] Plaintiff bears the burden to make this showing.[19] In 1987, DOJ promulgated a six-factor analysis to structure its consideration of the statutory two-prong test.[20] The first four factors address the public-interest prong, and the latter two factors the commercial-interest prong.

### (A) Public Interest Prong of the Fee Waiver Test

### (1) Operations or Activities of the Government

The first factor of the public-interest prong mandates that the "subject of the requested records must concern identifiable operations or activities of the federal government, with a connection that is direct and clear, not remote or attenuated." [21] The requester "bears the initial burden of identifying, with reasonable specificity, the public interest to be served." [22]

█ Judicial Watch fails to identify with reasonable specificity which of the government's operations or activities its request concerns. It posits two statements that arguably bear on this point. First, it states that it is "a non-profit, nonpartisan, tax-exempt 501(c)(3) organization which as a public interest law firm specializes in deterring, monitoring, uncovering, and addressing public corruption in gov-

ernment." [23] Second, it states that "[t]he subject of [its] request is information concerning the operations and activities of the government." [24]

Neither statement proffered by Judicial Watch sufficiently specifies the link between the information requested and the public interest. The first is merely a description of Judicial Watch's organizational mission, and does not remotely identify the public interest served by the specific FOIA request at issue here. The second statement is a conclusory assertion: Judicial Watch inadequately describes the public interest that disclosure of the information would serve. Under FOIA and applicable DOJ regulations, a requester seeking a fee waiver must do more than simply assert that its request somehow relates to government operations.[25] Thus, Judicial Watch fails to make the required showing under this first factor.

### (2) Information Likely to Contribute to Public Understanding

█ The second factor requires requested information to be "meaningfully informative about government operations or activities in order to be 'likely to contribute' to an increased public understanding of those operations or activities." [26] Courts usually find that information already in the public domain is not "likely to contribute" to public understanding.[27]

---

18. 5 U.S.C.A. § 522(a)(4)(A)(iii) (West 1996).

19. *Id.; see also Schrecker v. U.S. Dept. of Justice,* 970 F.Supp. 49, 50 (D.D.C.1997) (Lamberth, J.).

20. *See* 28 C.F.R. § 16.11(k)(2) (1999).

21. *See* 28 C.F.R. § 16.11(k)(2)(i) (1999).

22. *Fitzgibbon v. Agency for Intern. Development,* 724 F.Supp. 1048, 1050 (D.D.C.1989).

23. Pl.'s Req. at 3.

24. *Id.* at 4.

25. *See, e.g., McClellan Ecological Seepage Situation v. Carlucci,* 835 F.2d 1282 (9th Cir.

1987) (holding that conclusory statements are insufficient to support FOIA fee waiver).

26. *See* 28 C.F.R. § 16.11(k)(2)(ii) (1999).

27. *See McClellan,* 835 F.2d at 1286 (stating that information not previously released has more potential to contribute to the public understanding of government operations); *Campbell v. U.S. Dept. of Justice,* 164 F.3d 20, 36 (D.C.Cir.1998) (finding "only material that has met a threshold level of public dissemination will not further 'public understanding' "); *Carney v. U.S. Dept. of Justice,* 19 F.3d 807, 814–15 (2d Cir.1994) (stating that "the mere fact that particular records have been released to other requesters does not mean that the information contained in the records is readily available to the public," but that the

The *Schrecker* court opined that "what is and what is not public domain is not clear."[28] However, Judicial Watch points to no evidence in the administrative record to clarify what information it seeks. Its request for information about "Senator Hatch and [BCCI]" is so broad as to make the court's task of determining whether the requested information is already in the public domain impossible. Though Judicial Watch asserts that the request "is likely to 'contribute significantly' to the public's understanding of the operations of the[ ] government,"[29] as discussed *supra*, such statements—when unsupported by facts—do not meet the burden placed on fee-waiver requesters.

Judicial Watch further argues that its past "success . . . in uncovering important facts about government activities, integrity and operations" indicates that its present request meets this factor.[30] Judge Kotelly's reaction to this argument in a recent case rings true here: "Judicial Watch's past record in uncovering information is simply irrelevant."[31] Accordingly, the court finds that Judicial Watch has failed to carry its burden under this factor.

### (3) Public Understanding

■ The third fee-waiver factor requires that disclosure of the requested information "contribute to 'public understanding.' "[32] Under this factor, "[t]he disclosure must contribute to the understanding of a reasonably broad audience of

persons interested in the subject, as opposed to the individual understanding of the requester."[33] There is a presumption that a "member of the news media" meets this factor; however, other requesters must substantiate their ability to disseminate information.[34] Because the court affirms the decision not to classify Judicial Watch as a representative of the news media,[35] Judicial Watch must affirmatively establish its ability to disseminate requested information.

Judicial Watch states in its request letters that it disseminates information by allowing reporters to inspect its documents, producing "several press releases per week which are 'blast faxed' " to various media outlets, posting "press releases, responsive documents, deposition transcripts, and court opinions" on its website, and having its employees appear on radio and television programs.[36]

These conclusory statements—again unsupported by specific facts—do not meet Judicial Watch's burden here. Courts have determined that conclusory statements about contributions to public understanding are not enough to satisfy this factor. In *Oglesby v. U.S. Dept. of Army*, the court of appeals for this circuit found conclusory and insufficient the plaintiff's statement that "the information requested is beneficial to the public interest[,] I am a writer and lecturer who has disseminated such information in the past, and I intend to do so in the future."[37] Similarly, in

relevant inquiry is whether the requester will disseminate the information to a "reasonably broad audience of persons interested in the subject").

28. 970 F.Supp. at 50.

29. Pl.'s Req. at 4.

30. *Id.*

31. *Judicial Watch v. United States Dept. of Justice*, No. 99–2315, slip op. at 9 (D.D.C. Aug. 17, 2000).

32. 28 C.F.R. § 16.11(k)(2)(iii) (1999).

33. *Id.*

34. *See id.*

35. *See infra* Section III.B.2.

36. Pl.'s Req. at 3–4.

37. 920 F.2d 57, 66 (D.C.Cir.1990) (finding that this statement alone was not likely enough to meet his burden, but a second, more specific statement of particular journals in which the plaintiff had published in the past and which may be forums for his present work may meet the burden).

*McClellan,* the Court of Appeals for the Ninth Circuit found no reason to conclude that disclosure would contribute to public understanding.[38] In *McClellan,* the requesters, a nonprofit association and two of its individual members, asked for broad categories of technical information about water pollution at McClellan Air Force Base.[39] The court stated:

> Even if requesters have the ability to convey information to the public, they give no details about their intention to do so … requesters do not name a public institution to which they might donate information from the FOIA request. Without more specific information, which was not on the record before the agency, we have no reason to conclude that disclosure of the information will have much significance.[40]

Taken together, *Oglesby* and *McClellan* indicate that a requester who does not give specifics regarding a method of disseminating requested information will not meet this factor, even if the requester has the ability to disseminate information. Judicial Watch's statements have inadequate factual support in the administrative record and do not satisfy this factor.

In *Landmark,* this court noted that, in addition to disseminating information through blast-faxing, posting it on the Internet, and broadcasting it on radio and television stations, the plaintiff intended to use the information to author an "op-ed" article.[41] The *Landmark* plaintiff evidenced its intent to submit the article to news organizations by proffering past newspaper articles which it authored, firmly establishing the plaintiff's contacts to news organizations, and specifying the reason for which it sought information.[42] In this case, Judicial Watch does not specify

in the administrative record any news organization with which it has a relationship, nor does it specify any particular work product for which it requests the information. Judicial Watch's conclusory statement that it has corresponded with members of the media in the past and intends to share information with the media without specifying particular media contacts is not sufficient. Thus, the court concludes that Judicial Watch fails to meet its burden to establish that dissemination of the requested information contributes to "public understanding."

### (4) Significant Contribution

The fourth factor of the fee-waiver analysis requires that the information "significantly" contribute to public understanding of government operations.[43] Disclosure of the information should enhance the public's understanding on the subject in question as compared to public understanding prior to disclosure.[44]

Judicial Watch asserts that the information requested here will contribute significantly to the public's understanding of government operations because its past activities have uncovered important facts about the government. Again, Judicial Watch fails to support a bald assertion with factual support. Hence it has not met its burden to establish how information about "Senator Hatch and [BCCI]" will significantly contribute to the public understanding of government operations.

### (B) Commercial Interest Prong of the Fee Waiver Test

This second prong of the fee-waiver test is satisfied by a showing that the requested information "is not primarily in the commercial interest of the requester."[45]

---

38. *McClellan,* 835 F.2d at 1286.

39. *See id.*

40. *Id.*

41. *Landmark,* Civ. No. 97–1474 at 9.

42. *See id.*

43. *See* 28 C.F.R. § 16.11(k)(2)(iv) (1999).

44. *See id.*

45. 5 U.S.C.A. § 552(a)(4)(A)(iii) (West 1996).

As the court found *supra* that Judicial Watch has not satisfied the first prong of the fee-waiver test, it shall not evaluate Judicial Watch's claims under this prong. Accordingly, even if Judicial Watch can demonstrate the information requested here is not primarily in its commercial interest, the court concludes that DOJ is entitled to summary judgment on the challenge to its fee-waiver determination.[46]

## B. FEE CATEGORY

The fees required by FOIA are reduced for certain categories of requesters. For example, "representatives of the news media" are charged only for duplication.[47] Judicial Watch challenges DOJ's denial of its request to be considered a "representative of the news media." Instead, DOJ categorized Judicial Watch as an "all other" requester, requiring it to pay all search, duplication, and review fees.

### 1. Standard and Scope of Review

As a threshold matter, it is unclear what standard the court should apply when reviewing an agency's fee-category decision and what materials the court should consider in such review. The court recently discussed both issues in *Judicial Watch, Inc. v. United States Dept. of Justice.*[48] As the parties to that proceeding are the identical ones here, the court shall not rehash its prior analysis but, by reference to the above decision, shall apply arbitrary and capricious standard of review to DOJ's fee-category denial and shall restrict its scope of review to the administrative record.

### 2. "Representative of the News Media" Fee Category

 Judicial Watch argues that it is a "representative of the news media" because it disseminates information by allowing reporters to inspect its documents, producing "several press releases per week which are 'blast faxed'" to various media outlets, posting "press releases, responsive documents, deposition transcripts, and court opinions" on its website, and having its employees appear on radio and television programs.[49] It buttresses these statements by pointing to a previously released a 145–page report on President Clinton based on documents received through FOIA requests.

The court of appeals for this circuit has clarified that a "representative of the news media" is "a person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience."[50] In its regulations, DOJ defines a "representative of the news media" as "any person actively gathering news for an entity that is organized and operated to publish or broadcast news to the public."[51]

The court holds that the decision not to categorize Judicial Watch as a "representative of the news media" was not arbitrary or capricious for a number of reasons. Merely making information available to the public does not transform a requester into a representative of the news media.[52] In *National Secu-*

---

**46.** The court notes that in separate proceedings earlier this year, it and Judge Kotelly both found unconvincing virtually identical arguments in favor of fee waiver to those advanced here by plaintiff. *See Judicial Watch, Inc. v. U.S. Dept. of Justice,* 122 F.Supp.2d 5, 8–11 (D.D.C.2000); *Judicial Watch v. United States Dep't of Justice,* No. 99–2315, slip op. at 6–8 (D.D.C. Aug. 17, 2000) (Kotelly, J.).

**47.** *See* 5 U.S.C.A. § 552(a)(4)(A)(ii)(II) (West 1996).

**48.** 122 F.Supp.2d at 8 (D.D.C.2000).

**49.** Pl.'s Req. at 3–4.

**50.** *National Sec. Archive v. U.S. Dept. of Defense,* 880 F.2d 1381, 1387 (D.C.Cir.1989).

**51.** 28 C.F.R. § 16.11(b)(6) (1999).

**52.** *See National Sec. Archive,* 880 F.2d at 1386.

*rity Archive,* the plaintiff not only gathered and made information available, it culled items of particular interest and "expressed a *firm intention* ... to publish ... document sets" in which it supplemented the chosen documents with "detailed cross-referenced indices, other finding aids, and a sophisticated computerized retrieval system." [53] Essential to the *National Security Archive* court's decision that plaintiff was a "representative of the news media" was "the Archive's plan to act, in essence, as a publisher, both in print and in other media." [54] Unlike the plaintiff in *National Security Archive,* Judicial Watch has not expressed a "firm intention" to use the requested documents to publish a particular document. Plaintiff's general statements about its past activities are not specific enough to establish a "firm intention" to publish requested information. [55]

Perhaps of utmost importance, Judicial Watch does not define itself as a "an entity that is *organized and operated* to publish or broadcast news," [56] but rather as "a non-profit, non-partisan, tax-exempt 501(c)(3) organization which as a *public interest law firm* specializes in deterring, monitoring, uncovering, and addressing public corruption in government." [57] Accordingly, the court concludes that DOJ is entitled to summary judgment on the fee-category issue.

## IV. CONCLUSION

For the foregoing reasons, the court concludes that DOJ's motion for partial summary judgment concerning the fee-waiver and fee-category issues should be granted. Accordingly, it is this 2nd day of October 2000 hereby

**ORDERED** that DOJ's motion for partial summary judgment regarding the fee-waiver and fee-category issues is **GRANTED.**

---

**53.** 880 F.2d at 1386 (emphasis added) (citations omitted).

**54.** *Id.* at 1386; *see also Tax Analysts v. U.S. Dept. of Justice,* 965 F.2d 1092, 1095 (D.C.Cir. 1992) (finding the plaintiff a "representative of the news media" because the plaintiff published a weekly magazine which included summaries of recent federal-court tax decisions, provided full texts of federal-court tax decisions on microfiche, and published a daily electronic data base which included summaries and full texts of federal-court tax decisions).

**55.** Plaintiff's Statement of Material Facts in Dispute ("Pl.'s Fact St.") points out several additional facts regarding its dissemination of information. However, any information introduced by plaintiff in its court papers but not provided in the administrative record is of course not considered by the court here.

**56.** 28 C.F.R. § 16.11(b)(6) (1999) (emphasis added).

**57.** Pl.'s Req. at 3 (emphasis added).